The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Good morning. Please be seated. We are ready for argument this morning. The first case is Hamilton v. Pallozzi, Mr. Gura. Glad to hear from you. Thank you so much, Your Honors. May it please the Court, Alan Gura for James Hamilton, and I have reserved five minutes for rebuttal. Mr. Hamilton cannot be with us this morning, unfortunately. At the moment, he's carrying a gun at the Social Security Administration office in Anacostia. They wouldn't let him in the courthouse with a gun? They let him in the court. This courthouse. No, he's at work carrying a gun. I'm not sure whether they would allow him to this courthouse. They wouldn't. He is a federal protective officer in any event, and that's his job. They wouldn't. But he is not in court. He is, however, at the Social Security Administration. That's where he provides security these days, since he is authorized to do so in a federal law enforcement capacity. Now, there's no dispute, none at all, that if Hamilton were to possess that gun or any gun at his district heights home a few miles away, the defendants would arrest and prosecute him. Now, we know this not just by reading Maryland's vigorously enforced statutes, and not just because the state police told Hamilton that he can't possess guns in Maryland, and not just because the defendants emailed Hamilton's attorney with that position, but because in the briefing throughout this case, they've all but admitted as much. So unsurprisingly, the district court correctly found that this controversy is indeed ripe for adjudication. Now, the merits of Hamilton's claim are equally straightforward. At least four times in this court, and more in Pruis, in Smoot, and in Carpeleon, this court has held that individuals subject to a felon disarmament provision. Did the district court apply an as-applied challenge to this statute? It did not, Your Honor. Wait a second now. Did the court do an as-applied challenge but had the test wrong, or did the court not do an as-applied challenge at all below? The court refused to consider the as-applied challenge at all, Your Honor. The court held — Well, the court talked about his specific offenses. But the court, however, merely said that the fact that he had committed an offense meant that he was, you know, a bad person and subject to the law, that the law was itself reasonable. It talked about the fact that as a general matter, people are capable of recidivating, which is, of course, something that would always be possible to do. But the test in this Court is very different. Why do you think when he's — when the court below says, because it's not completely clear to me, but the court below said plaintiff has not shown that his factual circumstances, quote, remove his challenge from the realm of ordinary challenges, quote, that sounds like an as-applied determination. You may think the test wasn't applied correctly, but why isn't that an as-applied determination? He said he didn't meet — his facts don't meet the circumstances under a moor. Because the — the court's discussion related that his facts didn't meet the circumstances because he committed an offense that shows that he — they called it a malin and say offense. He said it was a — it's a — it's something that's illegal, and therefore, he's not a — Well, why isn't that a factual as-applied determination, though? Because the court used — I'm not trying to trick you. I'm just asking you. Sure. Because the court used a rationale. The court's rationale was one that you could use to defeat any as-applied challenge. And in this Court's — Well, it may be — well, it may be that's an improper, imprecise application of an as-applied challenge, but it seems to me that one as-applied challenge, the court would have said you're a felon, one sentence, you're a felon, case over. Okay. Your Honor, that — that is perhaps one way to read the Court's opinion. I'm not sure it makes a difference in the end because the — the practical effect of the Court's position was, given the factors that the Court used and given the Court's rationale, there is no as-applied challenge that could survive the Court's opinion. Well, if we were to agree with you that the case is justiciable and send it back, what level of scrutiny would you say should be considered by the district court? Under the Fourth Circuit's precedent, there would — there would not be any level of scrutiny because this Court has held in a number of cases that we have not the Fulchester two-step analysis, but rather what this Court has called in Moore and later in Pruis, a streamlined analysis. The two-step analysis only works when the government might have some rationale for applying a law against a person. But if at the first step the Court has determined that the person has Second Amendment rights because he or she is a law-abiding, responsible person, there is no governmental interest in disarming somebody who is law-abiding and responsible. Aren't you over-leaping some steps in the analysis? There — there really is no dispute here. Hamilton's — Hamilton's convictions are serious. He's convicted of a felony. The question is, what difference does it make? And give me your best case in support of the proposition that it makes a difference that the felony is nonviolent. Well, there are any number of cases. We begin, of course, with Heller. Heller told us that the felon prohibition — Well, but Heller tells us — I'm not sure that helps you — tells us that certain State regulations are presumptively valid, and regulations that bar possession of firearms by convicted felons is one of them. That's correct. So how does Heller help you? Because the word presumptively lawful, as this Court has held on numerous occasions, as the Third Circuit confirmed again last month, as virtually every court that's looked at it has — has noted, that means the presumption can be overcome. Right. So my question is, what specific support do you point to for the — for the rebutting of the presumption by the nature of the felony? Okay. The nature of the felony in this Court, under this Court's precedent, is a — is a serious factor. And if you look at the cases where the as-applied challenges were rejected in the circuit, in Moore, in Smoot, and Pruis, this Court described the underlying convictions having to do with extensive violent criminal history. That was Moore.  That was Smoot. In Pruis, we had at least 20 prior convictions of firearms laws. These were very dangerous people. And the touchstone is dangerousness. This Court has repeatedly confirmed. The test in Moore that this Court gave is as follows. A litigant claiming an otherwise constitutional enactment is invalid, and we don't contest the validity of the enactment. I thought the touchstone was seriousness. Seriousness. It is a holistic analysis, Your Honor. That is, we want to see whether or not this person is a responsible law-abiding citizen, and there are several factors that we can look to. The first factor is, what's the underlying conviction for? And is that conviction — does that conviction indicate the person is likely to be more dangerous with firearms than, you know, anybody else who might possess firearms in this country? Other factors that people look to, what has the person done since the conviction? Do they have any positions of responsibility? There are any number of factors, for example, that you can analyze, and here we've got a number of them that would tend to show that Mr. Hamilton is a responsible law-abiding person. I mean, he's a Federal police officer. That's one good clue. He was licensed to be an armed guard in Virginia. That's another. So he's been examined. He's been tested. He's had his character looked at. But you don't want to argue full faith and credit. Your Honor, I wish I could. You know, obviously — Well, you can. I was asking, but you don't want to? I can't because the Supreme Court won't let me, Your Honor. The Supreme Court has a number of cases that tell us that the full faith and credit clause is a rule of decision. So let's suppose that a — I'm asking why you don't want to because you're talking about what Virginia has done so much for him. Because you can't — I mean, I wish there were otherwise. As a lawyer, I have to look to see what cause of action are available for my client and not spend time on things that are hopeless. And here we have Supreme Court opinions that tell us that you can't — there's no implied cause of action under the full faith and credit clause. It's a rule of decision that binds courts, not State officials. So, yes, if we were litigating his ability to carry guns in a — in a Maryland court, let's say, then the Maryland court would have to respect the Virginia court's decision on the topic. And we would argue that as a rule of decision, perhaps that's relevant here. But it's not a cause of action. I can't sue a Maryland official for not following a foreign court's judgment because that's not — I'm not asking that as a cause of action. I'm asking that it inform our decision in any way. Oh. Well, let me correct that, Your Honor. Yes, it does inform your decision here. The full faith and credit statute as well as the constitutional — Well, I just asked that because you raised it, but you were answering Judge Junkin's question. Sure. Well, to answer Judge Junkin's question — Seriousness. Seriousness is a factor, but the ultimate inquiry is dangerousness. And obviously a serious crime, one that suggests the person is dangerous, courts will look to that and — and deny relief in appropriate cases. But we don't — Why do you think the relevant time period is only — if the question is whether or not this felon is dangerous, why is the relevant time period only since his conviction? Why shouldn't it be a review of his whole life? It would — Uncharged conduct, conduct for which he was acquitted. What about that? Your Honor, we would say that that probably would be relevant. I'm not going to say it's not. It's a holistic approach. And this is — So in other words, but you just told — you just told Judge Floyd that you win, correct? We — He asked — we'd send it back. What standard? You said, we win. We — Well, has this person's whole life been reviewed? Yes, in a way it has. The state has discovery on all his financial records to see if maybe it's committed any other financial acts that maybe don't rise to criminal misconduct or which weren't charged. Why wouldn't the state be under what you just said? Everything's open. You just said it — time period probably would extend before the conviction. Why wouldn't all that be on the table and subject to discovery by the government in this case? It would have been, Your Honor, except the state declined to do that. And I don't tell the state how litigated it is. Well, we send it back. We have a summary — Why can't it be opened back up? And they say based on what the rule of law is in this case, they ask for extended — for discovery. You wouldn't oppose that, would you? I would, Your Honor. And I would oppose it because — Because they didn't ask for it on the first time because they misunderstood the law? They didn't misunderstand. First of all, the law is very clear in this circuit, Your Honor. And people have a choice as to whether — Not on discovery. Your Honor, if I may, I've litigated some of these cases where the government has come and asked for discovery under Rule 56. And then under Rule 56, they have to make a certain showing as to why discovery would be relevant in a particular case. And we have cases — Because it shows what kind of person that he is. That's relevant. You just said that. No. Your Honor, in a Rule 56 inquiry, the party asking for discovery in response to certain judgment — I know. We know Rule 56. We've handled it many, many times. Okay. If the state wanted to come in with an argument saying we would like discovery because we have reason to believe that it will lead to evidence — What they would say is because his whole life — You just said — You answered my question by saying the time period before his felony conviction is part of his life record that should be looked at. That's what you just said. That's right, but — That's what I'm saying. And if they come in and say, in this holistic approach, we want to find out more about him to see if he might be dangerous, notwithstanding what his conviction was for. Well, Your Honor — But wouldn't that be a basis for discovery? It would because — Well, now we're talking — It really is a Rule 56 inquiry at that point. And then Rule 56 governs the question of, you know, whether you get — Your answer is it comes down to Rule 56. In that situation — As a district court judge, I would have granted that all day long. Well, then — And that's perhaps the district court's prerogative, which has a great — Okay. You know, that's — Does your response have anything to do with the position that you seem to take with respect to the level of scrutiny if we get to Step 2 of Chester? I understood your response to Judge Floyd to be that intermediate scrutiny would not be appropriate. And given the analysis that we are given in Chester, I'd like to know why you think that. I think that, Your Honor, because of this Court's decision in U.S. v. Moore and in subsequent decision in Pruess, where both decisions of this Court said that in an as-applied challenge, the inquiry — the Chester inquiry is streamlined, and — That's fascinating. I just thought you were completely rejecting Judge Shedd's question about whether this was a facial analysis or an as-applied analysis. Your Honor, it's an as-applied analysis. The application — the question is not facial, to be certain. We are not saying that Maryland's law is unconstitutional. That is not in the complaint. That's not on the table. In an as-applied challenge, as the Third Circuit explained last month in the Binder Up case, as any number of precedents would say what an as-applied challenge means, you look to the application of the law to the particular person and that particular person's circumstances. Now, that doesn't necessarily — Well, let's start with Chester, which predated — Okay. So if there's any conflict between them, between Pruess and Chester, Chester controls, right? I'm not sure, Your Honor, because Pruess is — explains Chester. If there's any — if there's any — this really isn't open for debate. If there's any distinction between a later decided decision and an earlier decided decision, the earlier decided decision controls. Are you really prepared to argue that? No, I think Your Honor is correct. However, let's — So my question is, why do we get to overleap the Chester instruction that the level of scrutiny to be applied if we get past step one is intermediate scrutiny? Your Honor, in our case, even if you were to apply intermediate scrutiny, okay, the — Why wouldn't you apply? My question is, why wouldn't you under Chester? The reason you wouldn't is because Chester makes clear, as virtually every case on the subject makes clear, that the inquiry is to see whether or not the person is a law-abiding, responsible citizen. That was the — That's what the — the first thing we have to do is decide whether or not Mr. Hamilton is outside the scope of protection of the Second Amendment because the regulation is presumptively valid or not. If he brings himself back within, then the question becomes, what level of scrutiny do we apply in assessing the validity of the — in assessing the validity of the statute? Because even if you were to apply intermediate scrutiny, let's suppose that you were to go through that analysis, Your Honor, and you were to apply intermediate scrutiny, you — on the first step, you wouldn't get to intermediate scrutiny unless the first step resulted in the conclusion — We're assuming that. Okay. We assume we're at — Because — We're at the scrutiny. We're at that stage. Okay. At intermediate scrutiny, the government bears the burden of showing that there is a strong interest in disarming this person. Right. And that's — but thank you. And that was the answer to my question, what happens. And I think you're acknowledging that intermediate scrutiny is appropriate. Do we have a factual basis in the record? Have we gotten to that point? Would we not have to remand for an analysis of that point? No, Your Honor. But look, we'll — I'll be happy to take a remand if that's the Court's will. The question then becomes, how does the government show? And this was the problem in Suarez. They can point to the studies that show that recidivist rates for violent felons and nonviolent felons are essentially — are very similar. Well, in that — But that sort of gets ahead of where we are at this juncture. Sure. The government hasn't had an opportunity. Oh, Your Honor, I would disagree with that. The government has had an opportunity because they were served with a motion for semi-judgment, and they chose to brief it as they did. Now, recidivism rates — So if we send it back — if we send it back, there's nothing further — and this goes back to Judge Shedd's question — there's nothing further that the government could show to justify — to discuss — to carry its burden under the intermediate scrutiny standard? Even if they were to have an opportunity to submit evidence of, say, recidivism rates, which the district court discussed, recidivism rates apply generally. They tell you why a general classification may or may not be — That's your argument against — that's the argument against them being relevant for decision-making. That doesn't say it's not relevant to put on the table to be discussed. That's what discovery is. But, Your Honor — I tell you, we'll — you want to borrow some time from your five minutes, or you want to save that time? We'll call you back. I can save it for about a — Okay, good. Thank you very much. Thank you. Mr. Bowen. Good morning, Your Honor. I may please the Court. Mark Bowen, appearing on behalf of the appellees. Absent an application and background investigation to determine Mr. Hamilton is disqualified from possessing firearms under Maryland law, Mr. Hamilton's claim is not right for adjudication. Does it matter? I mean, is there any basis? If there were any — if there were an investigation, no investigation, is there anything that would get passed? The fact that Mr. Hamilton has been told that under Maryland law he cannot apply for permission to own a firearm. I mean, do the other factors matter? Are there any — is there any combination of factors that would have changed the fact that he would be denied had he been — had he applied for a permit? Well, Your Honor, the plaintiff's complaint is based solely on one informal telephone — If you could just answer if — in fact, I sort of thought you had gotten to that point in your brief that Mr. Hamilton would have been denied. There doesn't even appear to be any contrary support in the record for the proposition that he wouldn't have been denied an application for a permit because of his felony conviction. Your Honor, the point is that he might have been disqualified on some other basis. But why is that the point? Well, if regardless of the existence of another basis, we know that he would have been denied for that reason. But if he was denied on another basis, it wouldn't be necessary for the court to make it. I'm asking why it makes any difference when he would have been denied regardless. Because there would be an alternative basis, and the Second Amendment argument would be moot, Your Honor. Well, then, is Prius still good law, which we held that the application of the felon in possession prohibition to allegedly nonviolent felons like Prius does not violate the Second Amendment? If that's still good law, we stop at step one in the case, so you win. Well, Your Honor, our position is that the fact that Mr. Hamilton was convicted of a felony, and, agreed, Prius says that you can consider nonviolent, that it's not necessary to defeat the Second Amendment that it be violent, that nonviolent crimes will disqualify. So, yes. I mean, our view is that because he was convicted of a felony, that he is not a law-abiding citizen, that he doesn't come within the protection of the Second Amendment, that he does not distinguish himself from the ordinary challenge, and that, in effect, his challenge becomes nothing more than a facial challenge, saying that all Maryland's laws violate the Second Amendment. But how did – well, a couple points here. Is your argument on not reaching the question of felony conviction disqualifying him, is that constitutional avoidance? Is that your argument that you don't get to the constitutional question if he would be disqualified on some other basis? No, Your Honor. My point is that under Moore— It seems to me it certainly is, but let me hear you say why it's not. Well, under Moore, an applicant who's making an as-applied challenge has to show— No, but you told Judge Duncan if he were to be disqualified on another issue, we wouldn't even get to this issue. Agreed, Your Honor. Based on what? Would that be constitutional avoidance that we wouldn't decide this issue because he would be disqualified on another issue? The court would not need to reach constitutional— You just told me not, though. You told me that was wrong. I asked was your basis the doctrine of constitutional avoidance, and you said no. Yes, the initial argument, yes, Your Honor, that we believe that if there— Now, back to a very good question as well that Judge Floyd asked you. Do you think this as-applied challenge in this circumstance also opens the door or justifies an as-applied challenge under an initial charge of 922G, felon in possession? Do you understand my question? I don't understand your question, Your Honor. You know, there's a Federal statute that says it's illegal for a felon to be in possession of a firearm. Yes, Your Honor. Maybe you are prepared to answer this question. I think Judge Floyd sort of indicated a good line, which is if we have as-applied challenges to felon having a right to have a firearm in this case, why wouldn't the same exact doctrine apply to an initial Federal prosecution for a felon in possession under 922G? It would, Your Honor. Okay. I mean, the position, as I understand Mr. Guerra's making, is that because the crime was a nonviolent crime, because it occurred so— But it didn't make any difference as to what his argument is. You think it would still be subject to—it would be subject to the same type of argument, which is basically I am a felon, but I fall outside the heartland of felons. Correct, Your Honor. I mean, this case relates to an application of Maryland law, but I believe the same argument would apply if the claim was a disqualification under Federal law. Let me ask this of you. Do you think what the district court did, did the district court view this as an as-applied challenge or just an absolute no felon ever gets to carry a weapon? Which was it? I believe it was an as-applied challenge, Your Honor, because the court discussed the nature of Mr. Hamilton's circumstances. The court did. What do you make of this language that's in the court's opinion? Plaintiff has shown that his factual circumstances remove his challenge from the realm of ordinary challenges. That sounds like an as-applied challenge, correct? Then the next sentence says, Accordingly, he has not carried dash italicized and cannot carry dash his burden at Chester Prong 1. What is that and cannot carry? How do you interpret that? Your Honor, I think what the court is saying is that the nature of Mr. Hamilton's circumstances does not take him out of the realm of ordinary challenges, and therefore he doesn't get past the first step. That would explain he has not carried, but he also says and cannot carry. Do you take that to – I'm just puzzled over that wording a little bit. I know it's the district judges, so you're not responsible for that. Your Honor, I'll hypothesize that perhaps the court was saying that even if additional factual information was presented. That's just my guess, Your Honor. Okay. Can you imagine a set of facts which would rebut the presumptively lawful Second Amendment constraints in Heller? You know, there's a – we have a presumption that regulation of this type is lawful. In your view, what circumstance would rebut the presumption? Would get to that level, Your Honor. Your Honor, I would point to, just by way of reference, the Third Circuit decision in the Bindrup and Suarez case that Hamilton refers to. In that case, the court, the majority decision, ended up drawing the line at a felony versus misdemeanor distinction and specifically rejected the idea of passage of time or rehabilitation as counting. Now, there was a dissent in that case. And the dissent basically took the position that, given the strong historical tradition of prohibiting felons in possession, that that should be a categorical disqualification, in effect that there would never be an as-applied challenge. She's asking, I think she's asking, what do you see as a successful as-applied? Your Honor, I don't know that I personally have a view on that. I mean, clearly, at least at a first step, I believe there is merit to the argument of felony versus misdemeanor. But the problem then becomes trying to decide what misdemeanors fall within. So you don't think there can be a successful as-applied challenge? Your Honor, I understand the decisions of this Court. I tend to favor the dissent in Bindrup and Suarez simply from the fact the difficulty both for the courts and the government to determine. I don't know that I disagree with you on that. It seems to me that when Heller says these statutes are presumptively valid, every statute is presumptively valid. As far as I know, every statute is presumptively valid. But we have to look at what courts have said. Maybe Heller makes sense. We have to look at what our Court has said. But maybe Heller makes sense if you look at a facial challenge. I don't know about the as-applied because of the as-applied, it clearly opens 922G and a host of other matters up to this kind of challenge. And if you can challenge it, who says that the judge decides it? As to what kind of person you are. And if you want to look at that and ask the other side, maybe it's not just the felony that the felon committed, but it's his or her whole life story from the time they were little children. Well, Your Honor, as the dissent noted in Bindrup and Suarez, the Federal Government had a program to allow individuals to apply for relief. They got rid of it, didn't they? Because they found it to be unworkable. And, in effect, if Mr. Gura is correct, he's opening up that box. And basically all courts will then have to deal with challenges to determine whether any given individual should or should not fall within the protection of the Second Amendment. So you can't think of any kind of as-applied challenge that might be successful even in your wildest dreams? As opposed to with respect to felonies? Yes. Well, with respect to felonies, I would say no. Now, the Court below did make a note, for instance, in its decision that Mr. Hamilton's offense was not a regulatory or technical offense. And perhaps those would be instances for misdemeanor convictions where a Second Amendment as-applied challenge might prevail for, in effect, an extremely minor kind of an offense. Do you think the law allows for, and as the law stands now, do you think the law allows for an as-applied challenge to the felon justification for a felon to have a weapon? Your Honor, given the language of the decisions, technically I think the answer is yes. But I think realistically, no. I mean, no court, no appellate court, federal appellate court has upheld an as-applied challenge as to a felon. And, in fact, in the binder of Suarez in the main decision, in footnote 6, I believe it is, the Court went to lengths to point out that their decision was based on the fact that these were state misdemeanor convictions. So you think that any way there's any discussion about as-applied challenge, you think that's either throwaway language or you wish to heck it was throwaway language? Well, Your Honor, I think the courts have left the door open to some set of facts. You know what I said. You either think it's throwaway language or you wish to heck it was throwaway. Okay, Your Honor, I'll take the I wish it was throwaway language. Maybe the or in there. I think that the courts have left the door open, because even in that footnote in Suarez, they left a small door open for a felon to make an as-applied argument. They all but closed that door. So I think it was simply a case of courts leaving open a door in case some situation comes up which the courts feel would suffice. In my simple-minded way, I look at this case. It seemed like there were two steps. He had to get past the first step before he could get to the law about him. The only defect, maybe, with the district court's finding as to step one, is he just said it's presumptively valid. Well, he could have done an analysis under intermediate scrutiny and nailed that down, that the state of Maryland has a right to prohibit felons from having firearms and uphold that in step one. And then he don't get to step two. Well, Your Honor, I think step two is the intermediate scrutiny analysis. What the court did is basically stop at step one. The court could have. I agree the court could have gone on to step two, but in fact just stopped at step one. And I think that's appropriate in this situation to stop at step one. Are there no other questions, Your Honor? We have no other questions. Thank you very much. Thank you, Your Honor. We have your brief, too. Thank you very much. Thank you. Mr. Gura. Thank you, Your Honors. First of all, I have some familiarity with the Bindrup case, and I'm not so sure that the court drew a bright line there between felons and misdemeanors. For certain, both the three-judge portion of the majority led by Judge Ambrose as well as the five judges who were siding with Judge Hardiman comprising the eight-judge majority thought that it made a difference whether or not a conviction is for a felony or a misdemeanor. That is a factor. Do you have a case in which an as-applied challenge has been successful as to a felon? Yes, Britt v. State, North Carolina, the North Carolina Supreme Court. I believe that case involved drug trafficking. Do you have a federal case in which such an as-applied challenge has been successful in the case of a felon? No, I don't. This is a new area of law, Your Honor, and the fact that we've not seen that many cases on the topic perhaps should not be surprising. However, we have seen many cases in this court, starting with Chester and going on to Pruis, going on to Moore, going on to Smoot, going on to Carpio Leone, and in all those cases there is this concept that as-applied challenges are indeed available. And they're available because people can be legitimately, you know, barred under perhaps at the facial level, where there's a classification that targets their conduct, but they should be allowed to go to court because there is a Second Amendment right here. Let's not forget we're talking about a fundamental right. It has some meaning. It has some content. And that means people can go to court and make the argument that they fall, notwithstanding what the statute says, based on their facts and circumstances, within the category of law-abiding and responsible people. And, Judge Shedd, I very much appreciate your question to my colleague here. It does seem like a step one decision because the difference between an as-applied and a facial challenge is that in an as-applied challenge, the facts matter, the facts of the conviction, the facts of what the person has done with his life. The court talked about the facts in this case. The court – He talked about the felonies that your client committed. And said that because there was a criminal conviction, there could not be – No. No. No, that's not correct. He distinguished them. He said they weren't regulatory crimes. They were mala and say crimes is what he said. Okay. Your Honor, one could make the argument that the distinction should be regulatory crimes. One can make the argument – I know that. But not one could make – you said the court didn't consider the facts. And that's where I started asking you. Because – The court clearly did consider the facts. Listen, that's why I asked you if – did the court use the as-applied or did the court use the as-applied but applied the test improperly? He talks about the facts. That's why I'm asking you. Your Honor, while the court did recite some facts, the reasoning was if you want to talk about regulatory crime versus non-regulatory crime, the bottom line is that the test is not regulatory or non-regulatory or felony misdemeanor. The test given both in Heller and repeatedly time after time after time in this court is law-abiding responsible citizen. And the touchstone is dangerousness. We want to know – the Third Circuit, some judges had a virtue, which is also different than this regulatory distinction. I know that. But the question may be law-abiding and judged by what? Judged by his life? Judged by – He hasn't been law-abiding. And by the way, a felon who commits a violent felony a year ago and has turned his life around and is following the law right now is law-abiding right now. Your Honor, I don't believe such a felon would have a very good chance of succeeding in a case like this. Well, I know. That's what you think. That's what you think. But that doesn't mean that's what the law is or what the test is. If you're going to hang it just on law-abiding is my point. Well, Your Honor, we have judges to make these decisions. That's what – they have to exercise judgment. They have to apply the law to the facts as they see them. We've entrusted them with certain authority, including the authority to see whether a search is reasonable or not. I'm just so sure it's the judge's decision and not a jury's decision. Well, the – Say in a 922G, why wouldn't that be a question for the jury? That would just be another defense they would offer up. I'm charged with being a felon in possession of a weapon. First of all, I'd like to say to the jury, I didn't have a gun that day. And even if I did have that gun, it wasn't mine. Or if I had that gun, it wasn't mine. And guess what? Even if I did have the gun and if it was mine, I fall outside the group of people who ought to be affected by this statute because I am a good felon. Well, Your Honor – I mean, why couldn't you make that argument? You want to make it to a judge. Who knows you don't make that to a jury? For the same reason – I'm not being – I'm not being funny. I'm being serious. Okay. Your Honor, and I have a serious response. For the same reason the jury wouldn't decide whether or not the motion to suppress should be granted because the police's search was unreasonable. There are some questions that we reserve to juries, namely the finding of facts. I know that, but that's – you were saying that. Has any court said that, that it's up only to a judge to decide this? I don't know of any case that said that. It would appear to me, Your Honor, that judges make constitutional decisions in our system and juries find facts. That would be a factual decision whether or not that person is a good person. That would be a factual determination. But at any rate – It's not – Do you have a question anymore? Do you have a question? I talked over you. I'm going to give you 30 seconds to wrap up your argument. Well, you know, I recognize that applying the Bill of Rights costs money. It's time-consuming. Some people aren't quite so sure that all those rights should have been ratified or should be perhaps applied in all the same way. But the bottom line is, look, we've got precedent. We have Heller. We have many decisions in this court that say that people can overcome the prohibition by showing that they are law-abiding, responsible people. There's no question that Mr. Hamilton is a law-abiding, responsible person, and the district court erred in dismissing his challenge. Thank you, Your Honor. All right. Thank you very much. We'll step down and greet counsel and go directly to the next case.
judges: Dennis W. Shedd, Allyson K. Duncan, Henry F. Floyd